# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| CELIA L. WARR-HIGHTOWER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   1:17-cv-01153-JBM-JEH |
| | ) | |
| ILLINOIS CENTRAL COLLEGE, THE | ) | |
| BOARD OF TRUSTEES OF ILLINOIS | ) | |
| CENTRAL COLLEGE, CARL CANNON, | ) | |
| KELLY DANIELS, PAULA DAVIS, | ) | |
| MICHAEL EVERETT, DIANE M. LAMB, | ) | |
| FRANK M. MACKAMAN, GALE | ) | |
| THETFORD, DON BRENNAN, SUSAN | ) | |
| K. TODER-PORTSCHELLER, JOHN | ) | |
| ERWIN, WILLIAM TAMMONE, BRUCE | ) | |
| BUDDE, SHEILA QUIRK-BAILEY, | ) | |
| RITA ALI, MARTHA BLOODSAW, AMY | ) | |
| DAXENBICHLER, EMILY POINTS & | ) | |
| TRACY MORRIS | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER & OPINION

The matter is before the Court on Defendants' Motion to Dismiss the Amended Complaint. (Doc. 16). The motion has been fully briefed. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

On April 14, 2017, Plaintiff Celia Warr-Hightower ("Hightower") brought a class action complaint against Illinois Central College ("ICC") alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1983. (Doc. 1). On July 28, 2017, Hightower

1

filed an amended class action complaint[1] adding multiple defendants in addition to ICC: ICC's Board of Trustees (the "Board"); current and former members of the Board, Carl Cannon, Kelly Daniels, Paula Davis, Michael Everett, Diane M. Lamb, Frank H. Mackaman, Gale Thetford, Don Brennan, and Susan K. Yoder-Portscheller; former President of ICC John Erwin; former interim President of ICC William Temmone; former interim President of ICC Bruce Budde; current President of ICC Dr. Sheila Quirk-Bailey; ICC's Vice President of Diversity Rita Ali; ICC's Vice President of Human Resources Martha Bloodsaw; and Hightower's supervisors, Amy Daxenbichler, Emily Points, and Tracy Morris.

The following facts are taken from Plaintiff's amended complaint and are assumed to be true for purposes of this motion to dismiss. *See Murphy v.* Walker, 51 F.3d 714, 717 (7th Cir. 1995). The Court will separate Hightower's class action claims from her individual claims.

## I. Hightower's Individual Claims

Hightower is an African American woman and has been employed by ICC from 2011 until present as a Counselor and Advisor. (Doc. 12, ¶¶ 10, 20). She has a bachelor's degree in psychology, a master's degree in human development and counseling, and is currently working towards her Ph.D in education from Illinois

---

[1] On June 23, 2017, ICC filed a motion to dismiss the original complaint. (Doc. 5). Plaintiff filed her amended complaint shortly thereafter on July 28, 2017. Local Rule 7.1(E) provides that "[w]henever an amended pleading is filed, any motion attacking the original pleading will be deemed moot unless specifically revived by the moving party within 14 days after the amended pleading is served." ICC did not revive its original motion; rather, it filed the instant motion. Thus, ICC's first motion to dismiss (Doc. 5) is DENIED as MOOT.

State University. *Id.* ¶ 19. Hightower's students have consistently given her extremely high remarks for her counseling abilities. *Id.* ¶ 21.

Hightower alleges that she was unlawfully denied two promotions for which she was qualified for on the basis of race. *Id.* at ¶¶ 19-27, 31-36. In late 2014, Hightower's supervisor retired and recommended Hightower for promotion. *Id.* ¶ 22. Hightower applied for the promotion. After the final interview, the Vice President of Student Services, Tracy Morris, asked to speak to Hightower one-on-one; Morris did not ask to speak one-on-one with the two white candidates under consideration for the position. *Id.* ¶¶ 24-25. During that meeting, Morris tried to convince Hightower that she did not really want to obtain the new position because Hightower really enjoyed counseling and interacting with students. *Id.* ICC chose a white woman, defendant Emily Points, for the role. *Id.* ¶ 27. Points had no experience or relevant education in counseling. *Id.* Points was the ICC's women's soccer coach and her degrees were in physical education and sports management. *Id.* Shortly after starting the new position, Points—now serving as Hightower's supervisor—gave Hightower a lower performance rating than Hightower had received in previous years. *Id.* ¶ 30.

Following Hightower's promotion denial, Morris instructed campus police to be "on guard" because Morris believed Hightower might react angrily. *Id.* ¶ 28. Hightower was offended and visited the Chief of Police to voice her displeasure with Morris's instruction. *Id.* ¶ 29. Shortly thereafter, Morris came to Hightower's office and accused her of being angry, stating that Hightower needed to "move on." *Id.*

In the fall of 2015, Hightower applied for a promotion to Director of Counseling, a position that Hightower had previously served successfully on an interim basis. *Id.* ¶ 31. Contrary to ICC's practice for other open positions for which there are qualified internal candidates, ICC elected to interview outside candidates for the position. *Id.* ¶ 33. Hightower was not chosen for the position. ICC instead hired a white woman, Amy Daxenbichler, from outside ICC for the role. *Id.* ¶ 34.

Upon learning that she did not get the position, Hightower spoke with Vice President of Diversity Rita Ali. Hightower pointed out that she had successfully served in the role of Director of Counseling on an interim basis. *Id.* ¶ 35. Ali responded that she was unaware that Hightower had served as interim Director of Counseling. *Id.*

Hightower complained to Ali, Vice President of Human Resources Martha Bloodsaw, and former interim President of ICC Bruce Budde about the promotion denials and Morris's characterization of Hightower as an "angry black woman," all of whom failed to meaningfully address her concerns. *Id.* ¶ 36.

Hightower alleges that after being passed over for promotions and since she complained, she has been unlawfully retaliated against in various forms. Plaintiff alleges that Daxenbichler delivered a "false and retaliatory disciplinary write up" which resulted in Hightower not being eligible for a standard pay raise, denied Hightower's request to take vacation days even though white employees were allowed to take those same days off, and required Hightower to participate in extra training on the weekends and evenings. *Id.* ¶ 38. Hightower further claims that Points and

Daxenbichler transferred her job location to another campus and that Points "laughed it off" when Hightower's office was broken into. *Id.* She further states that Morris and Daxenbichler denied Hightower the benefit of tuition reimbursement that was afforded to other white employees. *Id.* Lastly, Plaintiff claims that Points gave Hightower a lower performance review than she had received in the past. *Id.* ¶ 30.

Hightower contends that Defendants have discriminated against her on the basis of race and retaliated against her for complaining of racial discrimination. *Id.* ¶ 40. She brings claims for race discrimination and retaliation under Title VII and the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/5, against ICC. *Id.* ¶¶ 51-69. She brings individual-capacity equal protection claims pursuant to 42 U.S.C. § 1983 against the individual defendants. *Id.* ¶¶ 70-74.

## II. Hightower's Class Action Claims

Hightower asserts that ICC has a pattern and practice of discrimination "against its African American employees through policies, practices, and standard operating procedures." *Id.* ¶ 11. She contends that the "basic forms of discrimination" "fall into two basic categories." *Id.*

"First, ICC maintains a policy or practice of creating a predominantly and disproportionately non-African American upper echelon workforce, thus systematically denying African Americans the responsibilities, salary, and benefits of high-level positions." *Id.* ¶ 12. "ICC ensures that its upper ranks remain predominantly white through a variety of methods" such as denying African Americans promotions in a sham interview process that favors pre-selected white

candidates; hiring non-African American outside candidates for positions which qualified African American internal candidates have applied for; employing succession planning practices that fast-track non-African American employees for advancement over African Americans; denying tenure to qualified African American faculty; falsely disciplining African Americans for behavior permitted for non-African Americans; denying training opportunities for African Americans; and discouraging African Americans to pursue advancement by employing a Vice President of Diversity who regularly counsels African American employees to simply put their heads down and wait for better opportunities in the future. *Id.*

Second, ICC maintains the status quo of disproportionately non-African American leadership by channeling discrimination complaints into a sham investigation process, and retaliating against those who pursue discrimination complaints outside of that process. *Id.* ¶ 13. This sham process discourages African American employees from continuing to pursue advancement or challenge racial discrimination, and makes it more difficult for African Americans to find lawyers or timely pursue legal claims outside of the sham process. *Id.* Hightower asserts that the Board is acting in concert with Vice President of Human Resources Bloodsaw and Vice President of Diversity Ali to implement, devise, and enforce the aforementioned policies or practices of discrimination. *Id.* ¶ 14.

Hightower further claims that there are "numerous recent examples of ICC imposing a glass ceiling toward African Americans." *Id.* ¶ 15. ICC refused to give a tenure-track position to a well-respected African American professor. *Id.* When

students protested the school's action, President Quirk-Bailey attempted to intimidate the protesting students by telling them their protests would only make it worse for the professor. *Id.* ICC also "drove out" its only African American dean, reassigning him to a high school program. *Id.* Lastly, ICC denied a permanent role to an African American interim dean whose performance in the position was excellent. *Id.* ICC again chose a less qualified white candidate for the role. *Id.*

Hightower asserts class claims of race discrimination and retaliation against ICC and the Board in violation of Title VII and ICRA.

## III.    Defendants' Motion to Dismiss

On August 21, 2017, Defendants filed the instant motion to dismiss Plaintiff's Amended Complaint making several arguments in support of dismissal. (Doc. 16). On October 10, 2017, Plaintiff filed a response contesting all of Defendants' arguments. (Doc. 20). Defendants filed a reply on October 27, 2017. (Doc. 22). This matter is now ripe for decision.

LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give defendant notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts to "present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

Defendants advance several arguments in support of dismissal. First, Defendants argue that Plaintiff's Title VII claims are time-barred. (Doc. 16 at 5-7). Second, they contend that Plaintiff's Title VII allegations are not actionable because Plaintiff did not suffer any materially adverse employment actions. *Id.* at 7. Third, Defendants contend that Plaintiff's class Title VII claims are subject to dismissal for failure to exhaust administrative remedies. *Id.* Fourth, Defendants argue that Plaintiff has failed to plausibly plead class or individual claims under Title VII. *Id.* 9-14. Fifth, Defendants assert that Plaintiff's § 1983 claims fail to satisfy liberal pleading standards. *Id.* at 14-18. Sixth, Defendants contend that the individual Board members, former Presidents, and Bloodsaw are entitled to qualified immunity in their individual capacities. *Id.* 18-19. Lastly, Defendants argue that Plaintiff fails to

state a claim under ICRA or, alternatively, that the Court should decline to exercise supplemental jurisdiction over Plaintiff's ICRA claim. *Id.* at 19.

The Court will address each argument, starting with Plaintiff's class allegations, followed by analysis of her individual allegations.

## I. Hightower's Class Claims

### a. Plaintiff Has Not Exhausted Her Administrative Remedies

Defendants argue that Plaintiff's class claims are subject to dismissal for failure to exhaust her administrative remedies. Before a plaintiff can sue under Title VII, she must exhaust her administrative remedies. She must (1) file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the complained-of employment action in states like Illinois that have an equal employment opportunity agency, and (2) wait to sue until receiving notification—the "right to sue" letter—from the Commission that the Commission does not intend to sue. *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006). "The purpose of these requirements is both to give the Commission a chance to investigate the charge and decide whether to sue, and to encourage the complainant and the employer, with or without the state agency's or EEOC's assistance, to resolve their dispute informally." *Id.*

If the dispute is not settled at the administrative stage, the complaining party can sue. *Id.* A plaintiff's federal complaint may only contain those claims that were first presented in her underlying EEOC charge of discrimination. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "For a claim to fall within the scope of

an EEOC charge, the claim must be 'like or reasonably related' to the allegations in that charge or reasonably likely to be part of the EEOC investigation." *Brady v. Boehringer Ingelheim Pharms., Inc.*, 525 F.Supp.2d 1034, 1036 (N.D. Ill. 2007) (citing *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)). While a plaintiff is given leeway and is not required to allege each fact that forms the basis of her claim in her EEOC charge, *Brady*, 525 F.Supp.2d at 1036 (citing *Cheek*, 31 F.3d at 500), a Title VII plaintiff may not bring class action claims when "[n]either the charge nor the ensuing investigation put [defendants] on notice of the plaintiffs' intention to file a lawsuit containing allegations of class-wide discrimination." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127-28 (7th Cir. 1989).

Hightower's EEOC charge states as follows:

> I was hired by Respondent [ICC] in or around October 2011. My current position is Counselor and Advisor. During my employment, I have applied for promotions. I was not selected while less-qualified non-Black individuals were selected. I complained to Respondent to no avail. Subsequently, I have been disciplined and subjected to different terms and conditions of employment, including but not limited to, receiving poor performance evaluations. I believe I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964 as amended.

(Doc. 17-1, Exh. A).[2] The Seventh Circuit has stated that the charge need not expressly state that the complainant intends to represent himself and others

---

[2] Normally, if a district court, in ruling on a motion to dismiss, considers documents not incorporated into the complaint, the district court must convert the motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56. FED. R. CIV. P. 12(b); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir.2002). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993). The Seventh Circuit has

similarly situated. *Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008, 1017 (7th Cir. 1988). However, the majority of recent case law in this circuit holds that the charge "must give notice in some fashion that the discrimination was against not only the claimant but an entire group or class of people." *Vasich v. City of Chicago*, No. 11-4843, 2013 WL 80372, *4 (N.D. Ill. Jan. 7, 2013) (collecting cases that dismiss class claims); *Chicago Regional Council of Carpenters v. Pepper Construction Co.*, 32 F.Supp.3d 918, 926 (N.D. Ill. 2014) (dismissing class claims because EEOC charge that alleged individual discrimination based on disability did not put defendant on notice). The charge here only refers to specific individual instances of discrimination, and it speaks exclusively of discrimination against Hightower. *See Schnellbaecher,* 887 F.2d at 128 (affirming dismissal of class-wide allegations because plaintiffs' charges referred to "a specific individual instance of discrimination."); *Anderson,* 852 F.3d at 1016 (holding that the defendant must "at least be apprised during the conciliation process of the possibility of a subsequent lawsuit with many plaintiffs."); *Metz v. Joe Rizza Imports, Inc.*, 700 F.Supp.2d 983, 990-91 (N.D. Ill. 2010) (dismissing classwide claims where Plaintiffs frequently used the first-person singular "I" and the singular possessive adjective "my" in describing the particulars of their grievances).

Furthermore, Hightower's EEOC charge does not include any allegations upon which allegations of class-wide discrimination can be inferred. Because the original

concluded that an EEOC charge, if referred to in the complaint, may be attached to a defendant's motion to dismiss. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir, 2014). Hightower references the EEOC charge in her amended complaint, and therefore the Court properly considers it. (Doc. 12, ¶ 42).

charge contains no reference to any class-wide allegations, the amended complaint may not introduce those charges for the first time. Plaintiff's class allegations are therefore dismissed without prejudice for failure to exhaust administrative remedies. *See Smuk v. Specialty Foods Grp., Inc.*, No. 13-8282, 2015 WL 135098, *1-*2 (N.D. Ill. Jan. 9, 2015) (dismissing employment discrimination claims for failure to exhaust without prejudice); *see Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) (holding that "the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice").

### b. Even if Plaintiff's Class Claims Were Exhausted, Plaintiff Has Not Pleaded Plausible Class Allegations and Amendment Likely Would Not Cure the Deficiencies

Even if Plaintiff exhausted her class allegations, Defendants argue that Plaintiff's class allegations are deficient under civil pleading standards. Plaintiff has not moved for class certification, but class certification can be denied even before the Plaintiff moves for class certification. *Kasalo v. Harris & Harris, Ltd.,* 656 F.3d 557, 563 (7th Cir.2011) (Under Rule 23(c)(1)(A), a court may "deny class certification even before the plaintiff files a motion requesting certification"); *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 880 (N.D. Ill. 2014).

"An individual litigant seeking to maintain a class action under Title VII must meet 'the prerequisites of numerosity, commonality, typicality, and adequacy of representation' specified in Rule 23(a)." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). Plaintiff must also satisfy at least one subsection of Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). "Failure to meet any of the Rule's

requirements precludes class certification." *Id.* at 794. Plaintiff's amended complaint fails to satisfy several Rule 23 requirements, and amendment likely would not cure any of the deficiencies because Plaintiff's individual claims are not susceptible to class treatment.

The numerosity element requires that the class be "so numerous that joinder of all members is impracticable." FED. R.CIV. P. 23(a). Not only has Plaintiff failed to demonstrate that the proposed class is so numerous that joinder of all members is impracticable, she has also failed to provide a "reasonable estimate" of the number of members in her proposed class. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496, 501 (N.D. Ill. 2000) (numerosity "requires some evidence or reasonable estimate of the number of class members. . . ."). Thus, Plaintiff has failed to satisfy the numerosity requirement.

Plaintiff has also failed to adequately demonstrate that there are questions of law or fact common to the purported class or that the claims or defenses of Hightower will be typical of the claims or defenses of the class, *i.e.*, the commonality and typicality requirements. The Seventh Circuit's decision in *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980), is instructive. Patterson made very similar claims to Hightower: that his employer, General Motors, had discriminated against him by replacing him with a white worker of lesser seniority and experience, by failing to promote him, by maintaining essentially an all-white department, and by harassing him in retaliation for the filing of various complaints with state and federal agencies. *Id.* at 478-79. The Seventh Circuit held that Patterson's claims were not

susceptible to class treatment because "[t]he issue of whether a particular job assignment or promotion denial was discriminatory would depend upon any number of factors peculiar to the individuals competing for the vacancy, including relative seniority, qualifications, availability for work and desire to perform the job. Each disciplinary action would present a different set of facts for each employee." *Id.* at 481. It further held that because Patterson's claims were "so personal," it was predictable that "a major focus of the litigation" would have been on a defense unique to Patterson, making him an inadequate class representative. *Id.*

The reasoning in *Patterson* calls doubt on whether Hightower's claims are susceptible to class treatment. Under the section in her complaint entitled "Classwide Factual Allegations," Hightower provides three examples where ICC "impos[ed] a class ceiling toward African Americans": (1) "ICC refused to give a tenure-track position to a well-respected African American professor whose colleagues subjected her to overt racial harassment during her time at ICC"; (2) "ICC drove out its only African American dean . . . stripping him of his substantial responsibilities and reassigning him to a high school program where he would no longer be a leader at the college"; and (3) "ICC denied a permanent role to an African American interim dean whose performance in the position was excellent." (Doc. 12, ¶ 15). These claims do not relate to "general policies or practices which are allegedly discriminatory, but rather to individualized claims of discrimination which could not possibly present common questions of law or fact sufficient to justify class action treatment." *Patterson*, 631

F.3d at 481 (internal quotations omitted).[3] While racial discrimination is by definition class discrimination, *Falcon*, 457 U.S. at 157, "it is settled law that a person of a given racial group may not represent other members of the group merely because they were all subjected to the same broad type of discrimination by a common employer." *Allen v. City of Chicago*, 828 F.Supp. 543, 551-52 (N.D. Ill. 1993) (finding no commonality because the amended complaint portrayed individualized claims of discrimination, the resolution of which required "independent consideration of each plaintiff's qualifications for his or her position, their previous work performance and duties, as well as the qualifications and work history of the white employees allegedly granted preferential treatment.").

---

[3] The Supreme Court has further explained why courts must conduct a rigorous analysis under Rule 23 in Title VII race discrimination cases:

> We cannot disagree with the proposition underlying the across-the-board rule-that racial discrimination is by definition class discrimination. But the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that respondent was denied the promotion because of his national origin, such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices. These additional inferences demonstrate the tenuous character of any presumption that the class claims are "fairly encompassed" within respondent's claim.

*Falcon*, 457 U.S. at 157-58.

By that same token, the Court is not satisfied that Plaintiff has demonstrated the requirements of Rule 23(b). Plaintiff alleges that the proposed class meets the requirements for certification under Rule 23(b)(2) and/or Rule 23(b)(3). (Doc. 12, ¶ 50). Rule 23(b)(2) states that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Rule 23(b)(3) states that a class action may be maintained if " the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

The Court cannot certify a class under Rule 23(b)(2) in this case because Hightower makes claims for individualized relief such as lost benefits and compensation, and reinstatement or promotions to various positions on behalf of herself and others similarly situated. *See Wal-Mart Stores, Inc. v. Duke*, 564 U.S. 338, 360 (2011) (finding that claims for individualized relief, like back pay, do not satisfy Rule 23(b)(2)). While Hightower purports to request injunctive relief in Count V of her amended complaint, Count V almost entirely requests monetary or other relief. *See Chicago Teachers Union, Local No. 1. v. Bd. of Educ. of City of Chicago*, 797 F.3d 426 (7th Cir. 2015) (explaining that "a 23(b)(2) class cannot seek money damages unless the monetary relief is incidental to the injunctive or declaratory relief."). Rule 23(b)(2) only applies when a single injunction would provide relief to each member of

the class. *Duke*, 564 U.S. at 360. It does not authorize class certification when each individual class member would be entitled to a *different* injunction against the Defendant. *Id.*

Furthermore, Plaintiff has also failed to demonstrate that a class should be maintained under Rule 23(b)(3). Proponents of a (b)(3) class must show: "(1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). "While similar to Rule 23(a)'s requirements for typicality and commonality, 'the predominance criterion is far more demanding.'" *Id.* at 814 (citing *Amchem Prods., Inc. v. Windsow*, 521 U.S. 591, 623-24 (1997)). Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Id.* at 815 (citing 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)).

"Failure to promote" cases like this one particularly involve individual and fact intensive liability determinations. A plaintiff makes a prime facie showing of race discrimination by showing that: (1) she is a member of a protected group; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employee who was promoted was a member of a different race and was not better qualified than she. *Nichols v. S. Ill. Univ.- Edwardsville*, 510 F.3d 772, 783 (7th Cir.

2007). Determining liability in regards to elements two and four would be highly fact intensive and individualized for each class member. Thus, it is unlikely that liability issues can be resolved for all members of the class in a single adjudication. *Compare Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 436-37 (N.D. Ill. 2003) (concluding that common issues did not predominate with regard to the class failure to promote claims because each class members' qualifications for a particular job are unique), *with Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201, 223-24 (N.D. Ill. 2014) (certifying hostile work environment class where majority of class members heard same racially abusive language and worked with same bad equipment).

Thus, even if Plaintiff's class claims were exhausted, the amended complaint fails to state plausible class action claims against ICC and the Board for race discrimination and retaliation. Because Plaintiff's individual claims are likely not susceptible to class treatment, amendment would not cure the deficiencies.

## II. Hightower's Individual Claims

### a. Hightower's Amended Complaint Does Not Unambiguously Establish That Her Title VII Claims Are Time-barred

Defendants argue that most of Plaintiff's Title VII claim are time-barred. "Title VII provides that a charge of racially discriminatory employment practices shall be filed with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005) (quoting 42 U.S.C. § 2000e–5(e)(1)). "For purposes of this statute of limitations, discrete discriminatory employment actions such as termination, failure to promote, denial of a transfer, or refusal to hire are deemed to have been taken on

the date they occurred, even if they form part of an ongoing practice or are connected with other acts." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-11 (2002)). "Thus, each discrete discriminatory act 'starts a new clock for filing charges alleging that act,' and charges not filed within 300 days of the act in question are not actionable." *Id.* (quoting *Morgan*, 536 U.S. at 113).

The parties disagree about when the clock in this case started. Defendants argue that Plaintiff's 300-day limit should be calculated from August 18, 2016, the date Plaintiff filed her EEOC charge. Plaintiff argues that her 300-day limit should be calculated from June 24, 2016, the date Plaintiff completed and signed an intake questionnaire with the EEOC. If we use Defendant's timeline, any actions that pre-date October 23, 2015 are time-barred. If we use Plaintiff's timeline, any actions that pre-date August 29, 2015 are time-barred. The Court need not reach this issue, however, because Defendants' timeliness arguments are premature.

Defendants' memorandum in support of their motion to dismiss (Doc. 17) and their reply (Doc. 22) includes specific dates on which many of the alleged acts of discrimination and retaliation occurred, while Plaintiff's complaint does not contain such dates. Plaintiff's complaint is vague as it relates to dates. Regarding the first promotion that Hightower was not chosen for, she alleges that she "participated in several interviews for the higher position in early 2015." (Doc. 1, ¶ 23). Regarding the second promotion that Hightower was not chosen for, the Director of Counseling position, Hightower contends that such position became available in "[f]all of 2015."

*Id.* ¶ 31. Plaintiff's complaint contains no other reference to dates. Thus, Plaintiff argues that she has not pleaded herself out of court.

"A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense," but a complaint need not overcome defenses. *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Coundation, Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). The Court agrees with Plaintiff that it would be inappropriate to presently consider Defendants' timeliness arguments because the relevant dates are not set out unambiguously in the amended complaint. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) ("We find it appropriate here to consider the statute of limitations because the relevant dates are set forth unambiguously in the complaint."); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (if the complaint itself sets forth "*everything necessary*" to satisfy an affirmative defense, it can be dismissed) (emphasis added); *Padron v. Wal-Mart Stores, Inc.*, 783 F.Supp.2d 1042, 1051 (N.D. Ill. 2011) (denying motion to dismiss on timeliness grounds even though Plaintiffs did not allege a specific date on which Defendant made a discriminatory pay decision); *Arnold v. Janssen Pharms., Inc.*, 215 F.Supp.2d 951, 959 (N.D. Ill. 2002) (Plaintiff did not put precise dates on any of her allegations and it was therefore "impossible" to determine whether her claims were time-barred on motion to dismiss). Furthermore, Defendants have merely alleged specific dates without providing an affidavit or any

other form of proof in support. *See, e.g.*, *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 719 (7th Cir. 1993) (contemplating, in an antitrust case, a circumstance where a defendant could prove a statute of limitations defense by attaching an affidavit to its motion to dismiss). Accordingly, the Court declines to dismiss Plaintiff's claims as time-barred at the pleading stage.

### b. Plaintiff's Retaliation and Race Discrimination Claims Under Title VII and ICRA Against ICC Satisfy Rule 8's Minimum Pleading Requirements

Defendants argue that Plaintiff has failed to plead plausible claims for race discrimination and retaliation under Title VII and ICRA. The Court disagrees. "A complaint alleging race discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of his race." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (internal citations omitted). The Seventh Circuit has repeatedly held "that a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Relatedly, when a non-discrimination statute, like the ICRA, says nothing about the burden of proof, courts look to Title VII case law for guidance. *Frobose v. Am. Sav. & Loan Ass'n of Danville*, 152 F.3d 602, 616 (7th Cir.1998). Thus, the analysis is the same for Hightower's racial discrimination claims under Title VII and ICRA. *See McFadden v. Bd. of Educ. For Ill. Sch. Dist. U-46*, No. 05-7640, 2006 WL 6284486, *8 (N.D. Ill. Oct. 3, 2006) (To state a prima facie claim under ICRA, plaintiff must allege that defendant treated the plaintiff differently because of her inclusion in an identifiable and constitutionally

protected class); *Hosick v. Chicago State Univ. Bd. of Trustees*, 924 F.Supp.2d 956, 966 (N.D. Ill. 2013) (analyzing Title VII and ICRA claims together).

"Pleading a retaliation claim under Title VII requires the plaintiff to 'allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result.'" *Carlson v. CSX Trans., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (citing *Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1029 (7th Cir. 2013)).

Defendants incorrectly argue that Plaintiff's amended complaint must establish a *prima facie* case of Title VII race discrimination and retaliation. The plaintiff's requirement to establish a *prima facie* case is an evidentiary standard, not a pleading standard. *Swierkiewicz v. Sorema N.A.*, 524 U.S. 506, 510 (2002) ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."). The Supreme Court has "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that the plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511; *Nevarez v. Community Unit Sch. Dist. No. 300*, No. 10-4303, 2011 WL 1113406, *2-*3 (N.D. Ill. Mar. 24, 2011) (plaintiff need not allege a prima facie case of retaliation to survive a motion to dismiss).

Plaintiff's amended complaint alleges that Defendants denied her two promotions based on her race, African American, and hired a less-qualified white individual for both positions. These allegations are sufficient to state a claim for Title

VII and ICRA race discrimination. When Plaintiff complained to individual Defendants about the racial discrimination, Plaintiff alleges that she was retaliated against in many ways, including falsely disciplining her and giving her bad performance reviews which resulted in a denied pay raise, denying her vacation days that were available to white employees, transferring Plaintiff to another job location, denying her the benefit of tuition reimbursement that was available to other white employees, requiring her to work extra hours on the weekends and evenings, and asking campus police to watch her closely. These allegations are sufficient to state a Title VII retaliation claim.

Defendants unpersuasively argue that the actions Plaintiff complains of in support of her retaliation claim are not actionable adverse employment actions. In the retaliation context, "adverse employment action" "simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 833 (7th Cir. 2015). Defendant does not dispute, nor could it, that Plaintiff engaged in protected activity by making internal complaints at ICC. *See id.* False disciplinary reports, denial of time off, transferring the job to another location, denying tuition reimbursement, extra training hours, asking campus police to watch her closely because she's "angry," and giving negative performance reviews "would certainly cause a reasonable worker to think twice about complaining about discrimination." *See id.* (plaintiff's allegations of screaming, false disciplinary reports, mistreatment of her daughter, and denial of time off were "adverse employment

actions" after she made an internal complaint); *Luevano*, 722 F.3d at 1029 (plaintiff sufficiently pleaded retaliation claim under Title VII where she alleged that she filed a complaint against her supervisor and then her hours were reduced).

Plaintiff's claims against ICC for race discrimination and retaliation under ICRA and Title VII satisfy Rule 8's liberal pleading standards.

### c. Plaintiff Has Adequately Pleaded Individual Capacity § 1983 Claims Against Some Individual Defendants

Defendants assert that Plaintiff has failed to plead a plausible equal protection claim under § 1983 against the individual defendants in their individual capacities.[4] The Seventh Circuit instructs that "the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection." *Williams v. Seniff,* 342 F.3d 774, 788 n. 13 (7th Cir.2003). Accordingly, the Court adopts its Title VII discrimination analysis *supra*, and finds that Plaintiff has sufficiently alleged § 1983 claims against Defendants Bruce Budde, Rita Ali, Martha Bloodsaw, Amy Daxenbichler, Emily Points, and Tracy Morris.

"For a defendant to be liable under § 1983, he or she must have participated directly in the constitutional violation. 'Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.'" *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir.2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996)). Plaintiff alleges that she complained

---

[4] Plaintiff's amended complaint specifically states that her § 1983 claims are "against Individual Defendants in their individual capacities" only. (Doc. 12 at 17).

to Budde, Ali, and Bloodsaw about her denied promotions to no avail. (Doc. 12 at 11). She alleges that Ali, as Vice President of Diversity, conducted a sham investigation into Plaintiff's discrimination complaints. *Id.* at 7. Ali also served as the chairperson of the hiring committee for the second promotion that Plaintiff was denied. *Id.* at 11. ICC hired Daxenbichler and Points, respectively, for the two positions that Plaintiff was not chosen for. Plaintiff alleges that Daxenbichler falsely disciplined her, denied her request for vacation days, and required her to do extra training on the weekends and evenings. *Id.* at 12. Hightower alleges that both Points and Daxenbichler transferred Plaintiff's job to a location on a different campus. *Id.* Plaintiff further avers that Morris and Daxenbichler denied her tuition reimbursement, and that Points "laughed it off" when Plaintiff's locked office was broken into. *Id.* Lastly, Plaintiff contends that Morris, who was the hiring committee chairperson for the first promotion that was denied to Hightower, tried to convince Hightower that she did not really want the promotion and asked to meet with her one-on-one, a request that was not made to the white candidates under consideration. *Id.* at 9. Thus, Plaintiff has plausibly pleaded personal involvement by Budde, Ali, Bloodsaw, Daxenbichler, Points, and Morris.

Defendants argue that Budde and Bloodsaw are entitled to qualified immunity. Government officials are entitled to qualified immunity from individual capacity § 1983 suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 802-3 (1982). Hightower had a

clearly established right to be free from race discrimination as part of her employment with ICC. *See Jacobeit v. Rich Tp. High Sch. Dist.* 227, 673 F.Supp.2d 653, 661 (N.D. Ill. 2009); *Auriemma v. Rice*, 910 F.2d 1449, 1457 (7th Cir.1990) (holding that "[n]o reasonable police chief could have objectively and reasonably concluded" that he or she could discriminate against his or her subordinates based upon race without violating their rights). The issue then is whether Plaintiff has alleged sufficient facts to make out a constitutional violation at all. *Pearson v. Callahan*, 555 U.S. 223, 233 (2009). At this juncture in the litigation, the Court declines to extend qualified immunity to Bloodsaw and Budde because Plaintiff alleges that she complained to Budde and Bloodsaw about discrimination, but that they failed to address her concerns. *See Nanda v. Moss*, 412 F.3d 836, 843 (7th Cir.2005) (affirming denial of qualified immunity to university dean in § 1983 discrimination suit who "completely ignore[d] each of the complaints" about discrimination the plaintiff had made against the department head); *Hildebrandt*, 347 F.3d at 1039 (supervisors who "turn a blind eye" to discrimination by subordinates may be personally liable under § 1983).

However, with respect to Carl Cannon, Kelly Daniels, Paula Davis, Michael Everett, Diane M. Lamb, Frank H. Mackaman, Gale Thetford, Shannon Quirk-Bailey, John Erwin, William Tammone, Don Brennan, and Susan Yoder-Portscheller, Plaintiff has not alleged any facts whatsoever that those Defendants were personally involved in the alleged employment discrimination and retaliation at issue here.

Thus, the Court dismisses Plaintiff's individual capacity § 1983 discrimination claims against those Defendants.

CONCLUSION

In summary:

1) Plaintiff's class allegations against ICC and the Board are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies. As Plaintiff only makes class-wide allegations against the Board, the Board is also DISSMISED WITHOUT PREJUDICE from this action;

2) Plaintiff's Amended Complaint does not unambiguously establish that her individual Title VII claims are time-barred;

3) Plaintiff has plausibly pleaded individual race discrimination and retaliation claims under Title VII and ICRA against ICC;

4) Plaintiff has plausibly pleaded individual capacity § 1983 claims against Defendants Bruce Budde, Rita Ali, Martha Bloodsaw, Amy Daxenbichler, Emily Points, and Tracy Morris;

5) Plaintiff has not plausibly pleaded individual capacity § 1983 claims against Defendants Carl Cannon, Kelly Daniels, Paula Davis, Michael Everett, Diane M. Lamb, Frank H. Mackaman, Gale Thetford, Shannon Quirk-Bailey, John Erwin, William Tammone, Don Brennan, and Susan Yoder-Portscheller. Those Defendants are hereby DISMISSED WITH PREJUDICE from this action; and

6) ICC's motion to dismiss the original complaint (Doc. 5) is DENIED as MOOT.

Entered this 14th day of November, 2017.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge